1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   IRIS H. O/B/O SHAUN ERIC H., an              Case No.: 5:19-01302 ADS
     Individual,

12
                              Plaintiff,

13
                      v.                          MEMORANDUM OPINION AND ORDER

14
     ANDREW M. SAUL, Commissioner of

15   Social Security,

16                            Defendant.

17

     **I.     INTRODUCTION**

18
             Plaintiff Iris H., on behalf of Shaun Eric H. ("Plaintiff"), [1] challenges Defendant

19
     Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or

20

21

22   [1] Plaintiff's and his representative's names have been partially redacted in compliance
     with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the
23   Committee on Court Administration and Case Management of the Judicial Conference
     of the United States.
24   [2] On June 17, 2019, Saul became the Commissioner of Social Security.  Thus, he is
     automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

1    "Defendant") denial of his application for a period of disability and disability insurance

2    benefits ("DIB").  Plaintiff contends that the Administrative Law Judge ("ALJ") failed to

3    properly consider medical evidence in assessing his residual functional capacity

4    ("RFC"), as well as erred in evaluating his subjective statements and testimony in

5    assessing his RFC.  For the reasons stated below, the decision of the Commissioner is

6    affirmed, and this matter is dismissed with prejudice.

7    **II.      <u>FACTS RELEVANT TO THE APPEAL</u>**

8            Plaintiff had a thirty-year career as a United States Marine.  (Administrative

9    Record "AR" 180).  Plaintiff retired from the Marines on February 28, 2015, which is his

10   alleged disability onset date.  (AR 37, 180).  Plaintiff testified that he has not done any

11   jobs since he left the Marines, nor has he applied for any jobs.  (AR 37).  Plaintiff also

12   testified that his retirement check has been his source of income since stopping work.

13   <u>Id.</u>

14           Plaintiff's DBI application alleges disability based on "PTSD, back injury, chronic

15   GI (GERD), chronic knee pain with custom brace, arthritis, traumatic brain injury, sleep

16   apnea, chronic migraines and bilateral hearing loss (wear hearing aids)."  (AR 216).

17   When asked at the administrative hearing as to his primary problems, Plaintiff testified

18   of as to issues with his hand (including his recent hand surgery) (AR 40-45), back, neck

19   and knee problems (AR 45-49), sleep issues caused by nightmares and due to being

20   uncomfortable from his CPAP machine (AR 46) and symptoms of post-traumatic stress

21   disorder ("PTSD") including a state of high vigilance, flashbacks and generalized anxiety

22   (AR 39, 49-50).  Plaintiff testified that he has received injections for his back, steroid

23   shots and braces for his knees and takes the pain medication Hydrocodone probably

24

1    once a day.  (AR 46-47, 52-53).  Plaintiff testified as to no further disabling conditions

2    and to no further treatments or medications for his conditions.

3    **III.    PROCEEDINGS BELOW**

4        **A.  Procedural History**

5        Plaintiff protectively filed his application for DBI on November 24, 2015, alleging

6    disability beginning February 28, 2015.  (AR 180-83, 217).  Plaintiff's claims were denied

7    initially on March 1, 2016 (AR 96-99), and upon reconsideration on May 24, 2016 (AR

8    105-09).  A hearing was held before ALJ Sharilyn Hopson on June 6, 2018.  (AR 33-64).

9    Plaintiff, represented by counsel, appeared and testified at the hearing, as did vocational

10   expert Randi A. Langford-Hetrick.  (Id.)

11       On August 1, 2018, the ALJ found that Plaintiff was "not disabled" within the

12   meaning of the Social Security Act.[3]  (AR 15-27).  The ALJ's decision became the

13   Commissioner's final decision when the Appeals Council denied Plaintiff's request for

14   review on May 19, 2019.  (AR 1-4).  Plaintiff then filed this action in District Court on

15   July 16, 2019, challenging the ALJ's decision.  [Dkt. No. 1].

16       On November 27, 2019, Defendant filed an Answer, as well as a copy of the

17   Certified Administrative Record.  [Dkt. Nos. 13, 14].  Plaintiff filed a Motion for

18   Summary Judgment on June 1, 2020 [Dkt. No. 22] and Defendant filed a Cross Motion

19   for Summary Judgment on July 30, 2020 [Dkt. No. 25].  The case is ready for decision.[4]

20

21   ───────────────
     [3] Persons are "disabled" for purposes of receiving Social Security benefits if they are
22   unable to engage in any substantial gainful activity owing to a physical or mental
     impairment expected to result in death, or which has lasted or is expected to last for a
23   continuous period of at least 12 months.  42 U.S.C. §423(d)(1)(A).
     [4] The parties filed consents to proceed before the undersigned United States Magistrate
24   Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment.  [Dkt. Nos.
     9, 10].

1        **B.  Summary of ALJ Decision After Hearing**

2        In the decision (AR 15-27), the ALJ followed the required five-step sequential

3    evaluation process to assess whether Plaintiff was disabled under the Social Security

4    Act.[5]  20 C.F.R. § 416.1520(a).  At **step one**, the ALJ found that Plaintiff had not been

5    engaged in substantial gainful activity since February 28, 2015, the alleged onset date.

6    (AR 17).  At **step two**, the ALJ found that Plaintiff had the following severe

7    impairments: (a) post-traumatic stress disorder (PTSD); (b) post-traumatic brain injury

8    in 2003; (c) degenerative joint disease of bilateral knees; (d) arthralgia of the shoulders,

9    knees, hips, and ankles; (e) headaches; (f) sleep apnea; (g) degenerative disc disease and

10   degenerative joint disease of the spine; (h) foraminal stenosis; and (i) hearing loss

11   bilaterally.  (AR 18).  At **step three**, the ALJ found that Plaintiff "does not have an

12   impairment or combination of impairments that meets or medically equals the severity

13   of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

14   416.1520(d), 416.1525 and 416.1526)."  (AR 18).

15

16

17

18

19   [5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant
     is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the
20   claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant
     have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not
21   disabled is appropriate.  Step three: Does the claimant's impairment or combination of
     impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?
22   If so, the claimant is automatically determined disabled.  If not, proceed to step four.
     Step four: Is the claimant capable of performing his past work?  If so, the claimant is not
23   disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual
     functional capacity to perform any other work?  If so, the claimant is not disabled.  If
24   not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1   The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6]

2   to perform medium work as defined in 20 C.F.R. § 404.1567(c)[7,] further restricted by the

3   following limitations:

4       lift and/or carry 50 pounds occasionally, 25 pounds frequently;
        stand, walk or sit 6 hours of an 8-hour day; occasionally push and
5       pull with the bilateral lower extremities; frequently climb ramps and
        stairs, and occasionally climb ladders, ropes and scaffolds;
6       frequently balance and stoop; occasionally kneel; frequently crouch;
        occasionally crawl; should avoid concentrated exposure to loud
7       noises; frequently handle, finger, and feel bilaterally; and limited to
        tasks with a reasoning level of 2 or less.

8   (AR 19-20).

9
10  At **step four**, the ALJ found that Plaintiff is unable to perform any past relevant

    work. (AR 25).  At **step five**, considering Plaintiff's age, education, work experience and
11
    RFC, the ALJ found that "there are jobs that exist in significant numbers in the national
12
    economy that the [Plaintiff] can perform."  (AR 26).  The ALJ accepted the vocational
13
    expert's testimony that Plaintiff would be able to perform the representative occupations
14
    of: industrial cleaner (DOT 381.687-018); store laborer (DOT 922.687-058); and cleaner
15
    II (DOT 919.687-014).  Accordingly, the ALJ determined that Plaintiff had not been
16
    under a disability, as defined in the Social Security Act, from February 28, 2015, through
17
    the date of the ALJ's decision, August 1, 2018.  (AR 26-27).
18

19
    _____

20  [6] An RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  See 20 C.F.R. § 404.1545(a)(1).

21  [7] "Medium work" is defined as:
        lifting no more than 50 pounds at a time with frequent lifting or carrying of
22      objects weighing up to 25 pounds.  If someone can do medium work, we
        determine that he or she can also do sedentary and light work.

23  20 C.F.R. § 404.1567(c); see also James T. v. Saul, 2019 WL 3017755, at *1 (C.D. Cal.
    July 10, 2019).

24

1    IV.    ANALYSIS

2          A. **Issue on Appeal**

3          Plaintiff raises two issues for review: (1) whether the ALJ properly considered the

4    medical evidence of record in assessing Plaintiff's RFC; and (2) whether the ALJ

5    properly considered Plaintiff's subjective statements of record and testimony under oath

6    in assessing Plaintiff's RFC.  [Dkt. No. 22 (Plaintiff's Motion for Summary Judgment), 3,

7    14].

8          B. **Standard of Review**

9          A United States District Court may review the Commissioner's decision to deny

10   benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but

11   is confined to ascertaining by the record before it if the Commissioner's decision is

12   based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)

13   (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v.

14   Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of

15   fact if they are supported by substantial evidence and if the proper legal standards were

16   applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).  An ALJ can satisfy

17   the substantial evidence requirement "by setting out a detailed and thorough summary

18   of the facts and conflicting clinical evidence, stating his interpretation thereof, and

19   making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation

20   omitted).

21         "[T]he Commissioner's decision cannot be affirmed simply by isolating a specific

22   quantum of supporting evidence.  Rather, a court must consider the record as a whole,

23   weighing both evidence that supports and evidence that detracts from the Secretary's

24   conclusion."  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and

1   internal quotation marks omitted).  "'Where evidence is susceptible to more than one

2   rational interpretation,' the ALJ's decision should be upheld."  <u>Ryan v. Comm'r of Soc.</u>

3   <u>Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing <u>Burch v. Barnhart</u>, 400 F.3d 676, 679

4   (9th Cir. 2005)); <u>see</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006) ("If

5   the evidence can support either affirming or reversing the ALJ's conclusion, we may not

6   substitute our judgment for that of the ALJ.").  However, the Court may review only "the

7   reasons provided by the ALJ in the disability determination and may not affirm the ALJ

8   on a ground upon which he did not rely."  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir.

9   2007) (citation omitted).

10         Lastly, even if an ALJ errs, the decision will be affirmed where such error is

11   harmless, that is, if it is "inconsequential to the ultimate nondisability determination,"

12   or if "the agency's path may reasonably be discerned, even if the agency explains its

13   decision with less than ideal clarity."  <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th

14   Cir. 2015) (citation omitted); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012).

15         **C.  <u>The ALJ Properly Considered the Medical Evidence in Assessing</u>**

16         **<u>Plaintiff's RFC</u>**

17         Plaintiff contends that the ALJ failed to properly consider relevant and

18   substantial medical evidence, including a treating physician opinion, in assessing his

19   RFC.  First, Plaintiff argues that the ALJ improperly gave too much weight to the

20   findings of the consultative examining orthopedic and the State agency reviewing

21   physicians, who all assessed Plaintiff with a medium RFC.  Plaintiff contends that there

22   is significant medical evidence of his deteriorating conditions dated after the relied upon

23   physicians' opinions that the ALJ ignored.  Second, Plaintiff argues that the ALJ

24

1 improperly rejected the opinion of Plaintiff's treating psychiatrist.  Finally, Plaintiff

2 argues that the ALJ failed to properly consider his VA disability rating.

3         1.  <u>Legal Standard for Consideration of Impairments in the Disability</u>

           <u>Evaluation and for Weighing Medical Opinions</u>

4

5       At step three of the sequential evaluation, the ALJ determines whether the

6 claimant's impairment or combination of impairments is of a severity to meet or

7 medically equal a listed impairment.  Before turning to step four, the ALJ fashions the

8 claimant's RFC.  A district court must uphold an ALJ's RFC assessment when the ALJ

9 has applied the proper legal standard and substantial evidence in the record as a whole

10 supports the decision.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).  In

11 making an RFC determination, the ALJ may consider those limitations for which there

12 is support in the record and need not consider properly rejected evidence or subjective

13 complaints.  <u>Id.</u>  The Court must consider the ALJ's decision in the context of "the entire

14 record," and if the "'evidence is susceptible to more than one rational interpretation,' the

15 ALJ's decision should be upheld."  <u>Ryan</u>, 528 F.3d at 1198 (citation omitted).

16       An ALJ is not obligated to discuss "every piece of evidence" when interpreting the

17 evidence and developing the record.  <u>See</u> <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d

18 1006, 1012 (9th Cir. 2003) (citation omitted).  Similarly, an ALJ is also not obligated to

19 discuss every word of an opinion or include limitations not actually assessed by the

20 medical professional.  <u>See</u> <u>Fox v. Berryhill</u>, 2017 WL 3197215, *5 (C.D. Cal. July 27,

21 2017).

22       The ALJ must also consider all medical opinion evidence.  20 C.F. R. §§

23 404.1527(b), 416.927(b).  "As a general rule, more weight should be given to the opinion

24 of a treating source than to the opinion of doctors who do not treat the claimant."

-8-

1    Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).

2    Where the treating doctor's opinion is not contradicted by another doctor, it may only

3    be rejected for "clear and convincing" reasons.  Id. (citing Bayliss, 427 F.3d at 1216).  "If

4    a treating or examining doctor's opinion is contradicted by another doctor's opinion, an

5    ALJ may only reject it by providing specific and legitimate reasons that are supported by

6    substantial evidence."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting

7    Bayliss, 427 F.3d at 1216).

8          "Substantial evidence" means more than a mere scintilla, but less than a

9    preponderance; it is such relevant evidence as a reasonable person might accept as

10   adequate to support a conclusion."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

11   2007) (citing Robbins, 466 F.3d at 882).  "The ALJ can meet this burden by setting out a

12   detailed and thorough summary of the facts and conflicting clinical evidence, stating his

13   interpretation thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751

14   (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041

15   (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by

16   setting forth specific and legitimate reasons for rejecting the physician's opinion that

17   were supported by the entire record).

18          2.  The ALJ Properly Considered The Medical Evidence of Record

19          The ALJ gave significant weight to the opinion of the orthopedic consultative

20   examiner, Richard Pollis, M.D., that Plaintiff was able to perform work at the medium

21   level of exertion with limitations and a limitation to occasionally pushing and pulling

22   with the lower extremities.  (AR 23).  Dr. Pollis examined Plaintiff on February 17, 2016

23   and drafted a report of the orthopedic consultation dated this same date.  (AR 634-639).

24   The ALJ also gave significant weight to the opinions of the State agency medical

1    consultants (Dr. Strong and Dr. Bayar) who also concluded that Plaintiff was able to

2    perform a range of work at the medium level of exertion with postural limitations and a

3    limitation to occasional pushing and pulling with the lower extremities.  (AR 66-79, 81-

4    93).  Dr. Strong's assessment is dated March 1, 2016 (AR 79) and Dr. Bayar's assessment

5    is dated May 24, 2016 (AR 93).

6        Plaintiff contends it was error for the ALJ to give these opinions great weight as

7    there is substantial medical evidence that Plaintiff's condition substantially deteriorated

8    following these reports.  The leading argument of Plaintiff's substantial deterioration is

9    the fact that on February 11, 2020 Plaintiff passed away from pancreatic cancer.[8]  [Dkt.

10   No. 22, 4].  Although Plaintiff had been diagnosed with pancreatic cancer in

11   approximately November 2016 (AR 1298) and this condition was acknowledged by the

12   ALJ in her decision (AR 22), at the time of the ALJ's decision there was no evidence of

13   record that the cancer was a disabling condition.  Indeed, Plaintiff did not testify as to

14   any issues arising from the cancer when asked of the medical conditions preventing him

15   from working and nor did his counsel ask Plaintiff of any issues related to the cancer

16   during the hearing.  (AR 33-64).  Also, of significance, Plaintiff does not now point to

17   any medical records in evidence of a disabling condition caused by his cancer prior to

18   the ALJ's decision.

19       Plaintiff also points to medical evidence in the record of his physical condition

20   dated after the reports of Dr. Pollis and the State agency medical consultants and argues

21   they show deterioration of his condition that these physicians did not review and thus it

22   was error for the ALJ to have given significant weight to their opinions.  The ALJ,

23

24   [8] This action is now brought in the name of Plaintiff's wife on his behalf.  [Dkt. No. 18].

1    however, states that she carefully considered the entire record, and indeed discusses

2    many of the specific medical records highlighted by Plaintiff.  (AR 21-22, discussing

3    records contained at AR 862-64, 905, 917-30); see also Howard ex rel. Wolff, 341 F.3d

4    at 1012 (finding that an ALJ is not obligated to discuss "every piece of evidence" when

5    interpreting the evidence and developing the record).  Notably, none of these medical

6    reports or exams include a functional limitation assessment of Plaintiff's physical

7    condition and nowhere in the medical records did a physician find more restrictive

8    physical limitations than those adopted by the ALJ.

9          The ALJ simply did not err in assigning great weight to Dr. Pollis and the State

10   agency medical consultants' RFC assessment of medium work.  Although Plaintiff offers

11   alternative interpretations of the medical record, the Court is bound by the rationale set

12   forth by the ALJ in the written decision.  Ryan, 528 F.3d at 1198; see Robbins, 466 F.3d

13   at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion,

14   we may not substitute our judgment for that of the ALJ."); Tommasetti, 533 F.3d at

15   1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the

16   medical evidence.").

17               3.  The ALJ Properly Considered The Opinion of Dr. Minjares

18         Plaintiff next argues the ALJ improperly rejected the opinion of his treating

19   psychiatrist, Sean Minjares, M.D.  In her decision, the ALJ gave "no weight to the

20   opinion of Dr. Minjares documented in statements dated July 13, 2016 and September

21   2, 2017, that the [Plaintiff] is 'totally and permanently disabled due to his mental illness'

22   and 'incapable of engaging in meaningful labor either manual or cerebral.'"  (AR 24,

23   citing AR 859-60, 2058-62).  As Defendant notes, the ALJ properly found that Dr.

24   Minjares' extreme opinion was inconsistent with the evidence of record, including Dr.

1    Minjares' own treatment notes and examination findings.  (AR 24).  The ALJ reviewed

2    and pointed to the psychiatric treatment notes of record that did not evidence complete

3    incapacity of functioning by Plaintiff.[9]  (AR 18, 24).  Furthermore, the ALJ also pointed

4    to evidence in the record where Plaintiff stated that he engaged in activities outside of

5    his home, such as shopping, medical appointments and church and that he reported

6    visiting his mother and interacting with friends.  (AR 19, citing AR 225, 670).  The ALJ

7    found that all of this evidence contradicted Dr. Minjares' disability opinion.

8          Plaintiff also contends the ALJ rejected Dr. Minjares' opinion because it was

9    conclusory.  This is incorrect.  Rather, the ALJ properly noted that Dr. Minjares' opinion

10   of Plaintiff being "totally and permanently disabled due to his mental illness" is an issue

11   reserved for the Commissioner to determine.  (AR 24, citing 20 CFR 404.1527(e)).  See

12   McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("A treating physician's evaluation

13   of a patient's ability to work may be useful or suggestive of useful information, but a

14   treating physician ordinarily does not consult a vocational expert or have the expertise

15   of one.  An impairment is purely a medical condition.  A disability is an administrative

16   determination of how an impairment, in relation to education, age, technological,

17   economic, and social factors, affect ability to engage in gainful activity.")

18

19

---

20   [9] Plaintiff contends that the ALJ erred in failing to consider the examination performed
     by Dr. Reist on January 16, 2018 (AR 2312-13), which Plaintiff says supports Dr.
21   Minjares' rejected opinion.  While Dr. Reist's examination does include findings of
     Plaintiff's impaired mental condition, it does not have findings consistent with Dr.
22   Minjares' total mental disability assessment nor does Dr. Reist himself opine as to
     Plaintiff's functional limitations.  Accordingly, there is no error in the ALJ failing to
23   discuss this medical examination.  See also Howard ex rel. Wolff, 341 F.3d at 1012
     (finding that an ALJ is not obligated to discuss "every piece of evidence" when
24   interpreting the evidence and developing the record).

1    Thus, the ALJ complied with <u>Magallanes</u> and provided specific and legitimate

2  reasons for doing so that are supported by the entire record.

3    4.  <u>There is No Error in the ALJ's Weighing of Plaintiff's VA Rating</u>

4    Plaintiff was assessed with a 100% disability rating by the Veterans

5  Administration ("VA").  (AR 666-67).  Plaintiff simply argues it was error for the ALJ to

6  choose not to accept this rating.  The VA rating, however, is not binding on the ALJ as

7  properly noted in her decision:

8    [T]he VA evaluation process and the Social Security disability program
      are different programs, each with its own standard for evaluating and
9    establishing "disability."  An evaluation by the VA does not necessarily
      equate to a finding of disability under the Social Security Act, but the
10   VA evaluation must be considered (SSR 96-5p).  The VA evaluation
      assesses disability as a percentage but there are no specific findings
11   regarding vocationally relevant functional limitations that would
      correspond to Social Security Administration standards for the purpose
12   of finding disability under the Act.  *Because the VA records from which
      the disability rating was assessed do not contain a function-by-*
13   *function analysis of the [Plaintiff's] physical and mental capabilities,*
      *an assessment that is required to determine "disability" under the*
14   *Social Security Act, the undersigned assigns very little weight to the*
      *Plaintiff's VA disability rating of percent (20 CFR 404.1527(d)(3)-(4)).*

15
  (AR 24; italics added).
16
     The ALJ committed no error in assigning little weight to Plaintiff's VA rating.
17
  The ALJ properly set forth the law obligating her to consider the VA rating and then
18
  gave specific legitimate reasons for rejecting the rating.  <u>See</u> <u>McLeod</u>, 640 F.3d at 886
19
  (citing <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)) ("'[B]ecause the VA
20
  and SSA criteria for determining disability are not identical,' the record may establish
21
  adequate reason for giving the VA rating less weight."); <u>see also</u> <u>Nault v. Colvin</u>, 593
22
  Fed. Appx. 722, 723 (9th Cir. 2015) (finding that the ALJ appropriately focused his
23
  analysis on the claimant's VA medical records when the document reflecting the
24

1 claimant's disability rating of 40% "did not provide medical information regarding how

2 it was determined").

3      Accordingly, for the reasons outlined above, the Court finds no error in the ALJ's

4 consideration of the medical evidence in assessing Plaintiff's RFC.

5      **D. <u>Whether the ALJ Properly Evaluated Plaintiff's Testimony</u>**

6      Plaintiff asserts that the ALJ did not properly evaluate his subjective statements

7 and testimony regarding his symptoms and limitations in assessing his RFC.

8 Defendant, on the other hand, contends the ALJ properly evaluated Plaintiff's subjective

9 statements, finding them inconsistent with the record.

10      1. <u>Legal Standard for Evaluating Claimant's Testimony</u>

11      A claimant carries the burden of producing objective medical evidence of his or

12 her impairments and showing that the impairments could reasonably be expected to

13 produce some degree of the alleged symptoms. <u>Benton ex rel. Benton v. Barnhart</u>, 331

14 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical

15 findings are not required to support the alleged severity of pain. <u>Bunnell v. Sullivan</u>,

16 947 F.2d 341, 345 (9th Cir. 1991) (en banc); <u>see also</u> <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d

17 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to

18 support the severity of his pain") (citation omitted)). Defendant does not contest, and

19 thus appears to concede, that Plaintiff carried his burden of producing objective medical

20 evidence of his impairments and showing that the impairments could reasonably be

21 expected to produce some degree of the alleged symptoms.

22      Once a claimant has met the burden of producing objective medical evidence, an

23 ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of

24 malingering, or (2) expressing clear and convincing reasons for doing so." <u>Benton</u>, 331

1   F.3d at 1040.  To discredit a claimant's symptom testimony when the claimant has

2   provided objective medical evidence of the impairments which might reasonably

3   produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ

4   "may reject the claimant's testimony about the severity of those symptoms only by

5   providing specific, clear and convincing reasons for doing so."  Brown-Hunter, 806 F.3d

6   at 489 ("we require the ALJ to specify which testimony she finds not credible, and then

7   provide clear and convincing reasons, supported by evidence in the record, to support

8   that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

9          The ALJ may consider at least the following factors when weighing the claimant's

10   credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the

11   claimant's testimony or between the claimant's testimony and his or her conduct; (3) his

12   or her daily activities; (4) his or her work record; and (5) testimony from physicians and

13   third parties concerning the nature, severity, and effect of the symptoms of which she

14   complains.  Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citing Light, 119

15   F.3d at 792).  "If the ALJ's credibility finding is supported by substantial evidence in the

16   record, [the court] may not engage in second-guessing."  Id. at 959 (citing Morgan v.

17   Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

18                        2.   The ALJ provided Clear and Convincing Reasons Supported by
                               Substantial Evidence

19

20          Having carefully reviewed the record, the Court finds that the ALJ provided

21   specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[10]

22   The ALJ found: (1) Plaintiff's subjective complaints are not entirely consistent with the

23

24   _____

    [10] The ALJ did not make a finding of malingering in her opinion.  (AR 15-27).

1   medical evidence of record; (2) Plaintiff's treatment has been generally successful in

2   controlling his symptoms; (3) Plaintiff's daily activities are not consistent with his

3   subjective complaints; and (4) Plaintiff's statements concerning his alcohol intake is not

4   consistent with the medical evidence.  (AR 22-23).

5        Important to note, the ALJ did not entirely reject Plaintiff's testimony concerning

6   his pain, symptoms, and level of limitation.  The ALJ found that there is support in the

7   record that the Plaintiff's conditions restrict him from performing a full range of

8   medium work with nonexertional limitations.  Thus, the ALJ assessed Plaintiff with an

9   RFC of being able to perform work at the medium exertional level with nonexertional

10  limitations (AR 24-25), as set forth above.

11       The ALJ performed a thorough review of Plaintiff's entire medical record and

12  found that it did not fully support Plaintiff's allegations of disabling conditions.[11]  The

13  ALJ reviewed and cited to Plaintiff's medical records of his hearing, spine, neck, back,

14  knee and hand issues, and his psychological treatment and found that the records did

15  not demonstrate that Plaintiff would be unable to perform work at the medium

16  exertional level with nonexertional limitations.  (AR 17-25).  See Chaudhry v. Astrue,

17  688 F.3d 661, 672 (9th Cir 2012) (the ALJ's determination should not be second-

18  guessed where reasonable and supported by substantial evidence).

19  _____

20  [11] Plaintiff contends that rather than rely on Plaintiff's testimony and statements, the
    ALJ instead relied on the opinions rendered by Dr. Pollis and the State agency medical
21  consultants, which he again argues was improper as they were rendered prior to
    significant medical evidence in the record.  For the reasons set forth above, Plaintiff's
22  argument carries no weight.  See also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175
    (9th Cir. 2008) (finding that the medical evidence, including the opinions of two
23  physicians that a claimant could work, supported the ALJ's credibility determination);
    Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (an ALJ may consider physician
24  opinions that claimant could work, which contradict claimant's assertion to the
    contrary).

1    The ALJ properly considered how consistent Plaintiff's subjective symptom

2 statements were with this objective medical evidence.  20 C.F.R. § 404.1529(c)(2).  This

3 could not be the ALJ's sole reason for rejecting Plaintiff's statements about his

4 symptoms, but it was a factor that the ALJ was required to consider.  Id.; see also Burch,

5 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for

6 discounting pain testimony, it is a factor that the ALJ can consider in his credibility

7 analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's

8 subjective statements about symptomology "cannot be rejected on the sole ground that

9 it is not fully corroborated by objective medical evidence, the medical evidence is still a

10 relevant factor").  Thus, the lack of consistency between Plaintiff's medical records and

11 his testimony was a proper basis for the ALJ's discounting Plaintiff's testimony.

12    The ALJ also discounted Plaintiff's subjective statements in noting that his

13 treatment has been generally successful in controlling his symptoms.  (AR 22-23).  An

14 ALJ may properly consider Plaintiff's treatment history in analyzing Plaintiff's asserted

15 symptoms.  20 C.F.R. § 404.1529(c)(3)(iv),(v),(vi) (factors relevant to a claimant's

16 symptoms, such as pain, which the Commissioner will consider include medication

17 taken to alleviate symptoms; treatment received for pain; and measures used to relieve

18 pain).  The ALJ reviewed the medical record and pointed to several examples of where

19 improvement was documented for conditions Plaintiff testified as being severely

20 disabling, including mental health medications and therapy, steroid injections for his

21 knees, injections for his back, surgery for his wrists, hearing aids and pain medication.

22 (AR 22-23).  See Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006)

23 ("Impairments that can be controlled effectively with medication are not disabling for

24

-17-

1 the purpose of determining eligibility for SSI benefits").  It was proper for the ALJ to

2 consider Plaintiff's successful treatment for his symptoms.

3        The ALJ also found inconsistencies in Plaintiff's testimony with his stated daily

4 activities in his medical records and in his use of alcohol.  The ALJ noted that Plaintiff

5 testified that he spent most of his day doing puzzles in a recliner and little else, besides

6 going to the gym once or twice a month to ride the stationary bike for 15-20 minutes.

7 (AR 23).  However, the ALJ also pointed out that the records show that Plaintiff

8 "reported that he visits his mother several times a week, and he goes out and hangs out

9 with his friend."  (AR 23, citing AR 670, 681).  It was proper for the ALJ to consider

10 Plaintiff's reported daily activities of visiting his mother and hanging out with his friend

11 when assessing the credibility of his testimony of alleged symptoms and limitations.[12]

12 Daily activities may be considered to show that Plaintiff exaggerated his symptoms.  See

13 Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly

14 recognized that daily activities "did not suggest [claimant] could return to his old job"

15 but "did suggest that [claimant's] later claims about the severity of his limitations were

16 exaggerated.").

17        The ALJ also pointed out inconsistencies in Plaintiff's statements with the

18 medical evidence in regard to Plaintiff's alcohol intake.  The ALJ noted that Plaintiff had

19 testified and stated at one medical evaluation that he never drank alcohol; however,

20 other medical records reveal that he reported drinking 3-4 drinks at numerous office

21

22 [12] An ALJ is permitted to consider daily living activities in her credibility analysis.  See
20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered
23 in evaluating symptoms); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219,
1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh
24 inconsistencies between the claimant's testimony and his or her conduct, daily activities,
and work record, among other factors").

-18-

1    visits and of being drunk on one occasion in March 2018.  (AR 23, 635, 670, 682, 2676).

2    The ALJ noted that "[t]hese entries show the claimant's statements are not consistent

3    with the medical evidence."[13]  As Defendant argues, it was reasonable for the ALJ to rely

4    on evidence that Plaintiff was less than fully truthful in partially discounting his

5    subjective complaints.  See Thomas, 278 F.3d at 958-59 (finding proper that the ALJ

6    consider inconsistencies either in the claimant's testimony or between the claimant's

7    testimony and his or her conduct when weighing the claimant's credibility).

8         Based on these clear, convincing and specific reasons for partially rejecting

9    Plaintiff's pain and limitations testimony and the substantial evidence to support her

10   determination, the Court concludes that the ALJ did not commit error in discounting

11   Plaintiff's testimony.

12   **V.      CONCLUSION**

13        For the reasons stated above, the decision of the Social Security Commissioner is

14   AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered

15   accordingly.

16

17   DATE: September 30, 2020

18

19                                              /s/ Autumn D. Spaeth
                                        THE HONORABLE AUTUMN D. SPAETH
                                        United States Magistrate Judge

20

21

22   _____
     [13] Despite the ALJ's explicit language of Plaintiff's inconsistencies in the record of his
23   daily activities and alcohol intake, Plaintiff fails to address or even offer any explanation
     for the ALJ's findings.  Rather, Plaintiff merely states that all of his statements and
     testimony under oath have been consistent that he is incapable of performing full time
24   activity, and in particular medium work activity.  [Dkt. No. 22, 18].